**Bennett WINTERS, Plaintiff,**

v.

**TEXTRON, INC., Defendant.**

No. 3:97–CV–0784.

United States District Court,
M.D. Pennsylvania.

July 12, 1999.

Richard deY Manning, Wilkes–Barre, PA, for plaintiff.

Michael Robert Goffer, Schneider, Gelb, Goffer & Hickey, Scranton, PA, Michael R. Goffer, Scranton, PA, for defendant.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court is the plaintiff's motion for sanctions.[1] The plaintiff is Bennett Win-

1. On April 30, 1999, the court accepted the plaintiff's oral motion for sanctions. The court directed the plaintiff to file his brief in support of sanctions by May 5, 1999; and the defendant was directed to file its brief in opposition by May 7, 1999. Both briefs were timely filed.

ters; and the defendant is Textron, Inc. The parties have briefed their respective positions and oral argument has been heard. For the reasons which follow, the court is compelled to impose sanctions against the defendant.

## Background

On May 28, 1995, the plaintiff alleges that he was at the Four Season's Golf Club ("Golf Club") and rented a golf cart manufactured by the defendant.[2] After his golf game, the plaintiff drove up a gravel-covered road toward the clubhouse to return the cart. Plaintiff Winters claims that while making a left turn, the front left tire of the cart impacted with a low cement retaining wall that bordered the gravel road. Winters avers that the impact caused the steering wheel to spin uncontrollably and that the spoke of the wheel ripped his fifth finger away from his hand, causing a three-inch gash between the plaintiff's fourth and fifth fingers.

On May 20, 1997, the plaintiff filed a complaint against the defendant alleging, *inter alia*, that a design defect in the golf cart was the cause of his injuries. On July, 21, 1997, the plaintiff served interrogatories on Textron requesting information regarding, *inter alia*, the different models of carts manufactured by the defendant and the existence of any leases or writings pertaining to the carts. See Plaintiff's First Set of Interrogatories, Exhibit A to Plaintiff's affidavit in support of cross motion for sanctions filed April 19, 1999 ("Affidavit"). On January 12, 1998, Textron answered the interrogatories, claiming that such interrogatories were overly broad and burdensome.[3] See Defendant's response to interrogatories, Exhibit B to Affidavit. It was later discovered that the defendant warranted its golf carts and that the golf carts were taken to Canada and removed from the jurisdiction of this court without notice to the plaintiff.[4] See *infra*. Moreover, pursuant to a discovery conference held on December 15, 1998, the court ordered the defendant to produce full maintenance manuals[5] and all agreements relating to the golf carts.

The plaintiff contends that the defendant willfully failed to disclose the existence of the lease of the carts from the defendant to the Golf Club and deliberately removed the carts from the jurisdiction without notice to the plaintiff, thereby denying the plaintiff's expert an opportunity to inspect. Plaintiff Winters further claims that Textron failed to make required discovery and violated the court's order filed December 15, 1998 compelling the defendant to produce full maintenance manuals and all agreements relating to the golf carts. Conversely, the defendant contends that the plaintiff had adequate opportunity to inspect the carts and that Textron was not involved in removing the carts from the jurisdiction. Defendant Textron further submits that it has reasonably complied with discovery and that the motion for sanctions should be denied.

## Discussion

■ Federal Rule of Civil Procedure 37(b) provides that a court may impose sanctions upon a party for failure to comply with a discovery order. *Clarke v. Whitney*, 169 F.R.D. 623 (E.D.Pa.1996). Under Rule 37(b)(2)(C), "the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: ... [a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default

2. On July 30, 1993, Textron Financial Corp. agreed to lease golf carts to the Golf Club. The record reveals that the defendant and Textron Financial Corp. are the same entity and that the defendant is in the business of manufacturing and selling, *inter alia*, golf equipment and specialty products. See Mark Sobeck's Deposition dated March 31, 1999 at 31–32. Sobeck is the co-owner and general manager of the Golf Club. Sobeck Deposition at S.

3. Plaintiff served interrogatories on July 21, 1997. After numerous requests by the plaintiff, the defense eventually responded to the interrogatories on January 12, 1998.

4. The carts were removed from the Golf Club in January 1998 and moved to Canada, *after* the interrogatories were served and *immediately before* the defendant's response. Sobeck Deposition at 45–46: Defendant's response to plaintiff's interrogatories, Exhibit A to Affidavit.

5. The full maintenance manuals for the golf carts have not yet been produced by the defense.

against the disobedient party." Fed.R.Civ.P. 37. The Third Circuit has continuously asserted that defaults are drastic sanctions, termed extreme by the Supreme Court. *Clarke; Harris v. City of Philadelphia,* 47 F.3d 1311 (3d Cir.1995) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). A Rule 37(b) default judgment is appropriate for cases exhibiting "flagrant bad faith" and "callous disregard." *Clarke* (citing *Harris* ).

 After a thorough examination of the matter *sub judice,* we find that Textron violated its fundamental duty to preserve evidence critical to the plaintiff's case. Rather than preserving the golf carts, Textron sold the carts to another company and the carts were subsequently moved to Canada. Sobeck Deposition at 47–48. The law is clear that a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *Baliotis v. McNeil,* 870 F.Supp. 1285 (M.D.Pa.1994) (citing *Fire Ins. Exch. v. Zenith Radio Corp.,* 103 Nev. 648, 747 P.2d 911 (1987)). Moreover, knowledge of a potential claim is deemed sufficient to impose a duty to preserve evidence. *Id.*

> A duty to preserve evidence, independent from a court order to preserve evidence, arises when there is (1) pending or probable litigation involving the defendant; (2) knowledge of the existence or likelihood of litigation, (3) foreseeable prejudice to the other party if the evidence were to be discarded and (4) evidence relevant to the litigation.

*Id.* Instantly, the defense was on notice of plaintiff's claims against Textron when the plaintiff filed his complaint on May 20, 1997. Further, relocation of the golf carts from the jurisdiction deprives Winters of the right to examine the cart for, *inter alia,* a design defect and clearly hinders the plaintiff's ability to substantiate his claim. Crucial evidence in this case (golf carts) are not merely unavailable for inspection by the plaintiff and his expert; they are not available as exhibits, should they be subpoenaed, in the trial between the parties. The record is clear that

in January 1998 the carts were removed from the Golf Club and taken to Canada. The defendant gave the Golf Club several weeks' notice of the carts' removal but *gave no notice* to Plaintiff Winters. See Sobeck Deposition at 45–46.

The court is shocked by Textron's contention that the plaintiff had adequate opportunity to inspect the carts in early June 1995 during a re-creation of the incident and that the plaintiff is not prejudiced by the removal of the golf carts. Although the court does not dispute that there was an attempt to re-create the scene a few days subsequent to the date of the accident, the record is clear that a mere re-creation, unattended by the plaintiff's expert,[6] is woefully insufficient to relieve the defendant of its duty to preserve relevant evidence.

We further find that the defendant failed to comply with our order dated December 15, 1998, requiring Textron to provide the plaintiff with manuals and all agreements relative to the golf carts at issue by January 15, 1999. Despite the mandates of our court order, the defendant continues to deny the plaintiff access to the full maintenance manuals which are crucial to Winter's case. We are not convinced by the defense's explanation that any delay in producing the manuals should be attributed to the plaintiff. The record reveals that the plaintiff was operating either the E–Z–GO GX–444–4 or the E–Z–GO Medalist–Gas with Top Center Basket. See Exhibit 12 to Sobeck Deposition at 72. Clearly, the defendant should have produced a full maintenance manual for each model by January 15, 1999, and its avoidance is again symptomatic of Textron's contrary disposition towards the discovery rules and fair play.

Lastly, the court is convinced that Textron failed to make required discovery by not disclosing the existence of the lease and warranty between Textron and the Golf Club with regard to the golf carts. We are not in accord with Textron's position that the plaintiff had full access to the Golf Club and should have discovered the lease. The right of the plaintiff to request discovery from the defendant is fundamental and Textron should

---

6. Plaintiff's expert was not retained until May 4, 1998. See Exhibit 1 to Affidavit.

have produced the lease in its answer to interrogatories. See Exhibit A to Affidavit. Moreover, although the defense's brief is silent with regard to the issue of warranties, the deposition of the general manager of the Golf Club conclusively indicates that Textron improperly denied the existence of a "36–month bumper-to-bumper" warranty on the leased carts.[7] See Exhibit # 14 to Mark Sobeck's Deposition dated March 31, 1999; see also Sobeck's Deposition at 32–43.

In the matter *sub judice,* we have focused upon the behavior of Defendant Textron and the removal of the golf carts from the jurisdiction to another country. We gather from the above discussion and the behavior of the defendant that Textron was indifferent to its responsibility under the law and to a court of law. Textron's conduct can only be described as blatant arrogance. It is contrary to our sense of justice to hide evidence in any case once the party has been given notice of and made aware of litigation. Clearly, as illustrated *supra,* the egregious conduct of the defendant demands the imposition of sanctions. See *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863 (3d Cir. 1984).[8] Although the evidence reflects that Textron was clearly responsible for the dilatory and willful conduct which prejudiced Winter's claim and resulted in unnecessary expense to the plaintiff, *supra,* we hesitate to proceed to a jury trial on the issue of damages at this time. Default must be a sanction of last resort, and a court should impose alternative sanctions that would better serve the interests of justice. *Clarke.* Alternative sanctions short of dismissal or default judgment include, *inter alia,* a warning, a formal reprimand, a fine, the imposition of costs or attorneys fees and the preclusion of claims or defenses. *Titus v. Mercedes Benz of North America,* 695 F.2d 746 (3d Cir.1992). Rather than granting a default judgment, we shall impose upon the defendant the costs, including attorneys fees, of all expenses incurred by the plaintiff in attempting to obtain the full maintenance manuals and any relative agreements as set forth in our December 15, 1998 order. The defendant shall further produce an E–Z–GO GX–444–4 golf cart and an E–Z–GO Medalist–Gas with Top Center Basket golf cart as well as their accompanying full maintenance manuals. Due to the severity of the defendant's misconduct, the court is further compelled to impose a fine in the amount of ten thousand dollars ($10,000.00). The effectiveness of the sanction must be examined in light of an analysis of the subject of the sanction. Here, Textron is listed on the New York Stock Exchange as a multi-industry company with revenues of $10 billion dollars; 64,000 employees and a diverse, global customer base.

For the aforementioned reasons, the plaintiff's motion for sanctions is granted in part and denied in part. An appropriate order follows.

### ORDER

NOW, to wit, this 12 day of July, 1999, this court having considered the plaintiff's motion for sanctions, the briefs and argument of able counsel and for the reasons set forth in the accompanying opinion, it is hereby ORDERED as follows:

1. Plaintiff's motion for sanctions is GRANTED in part and DENIED in part;

2. Defendant is ORDERED to pay a fine in the amount of ten thousand dollars ($10,000.00) to the Clerk of the United States District Court;

---

7. Exhibit # 14 is a photocopy of an invoice which was produced by Mr. Sobeck during his deposition. The invoice represented that the E–Z–GO division of Textron, Inc. warranted a particular part of a golf cart, thus evidencing the existence of a warranty from the defendant to the Golf Course.

8. The court in *Poulis* states in part as follows:
 The courts have enumerated the following six factor balancing test for the imposition of severe sanctions [jury trial on the issue of damages only]: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the meritoriousness of the claim or defense; and (6) the effectiveness of sanctions other than dismissal, which entails the analysis of alternative sanctions.

3. Plaintiff's attorney is to submit a bill of costs for all fees incurred in attempting to obtain the full maintenance manuals and all agreements relative to the golf carts in question and for the production of the golf carts themselves;

4. Defendant has thirty (30) days from the date of this order to produce the full maintenance manuals for the E–Z–GO GX–444–4 golf cart and the E–Z–GO Medalist–Gas with Top Center Basket golf cart.

5. Defendant has thirty (30) days from the date of this order to produce an E–Z–GO GX–444–4 golf cart and an E–Z–GO Medalist–Gas with Top Center Basket golf cart (the two types of carts used at the Golf Club at the time the plaintiff's injuries occurred); and

6. Failure to comply with this order will result in a default judgment and a jury trial on the issue of damages only.