Laila BARSOUM, Plaintiff,

v.

NYC HOUSING AUTHORITY, Office of Quality & Cost Control of the NYC Housing Authority, Mario Radoslovich, Michael Meyer, "John Does" and "Jane Does," Defendants.

No. 00 Civ. 3679 (RWS).

United States District Court,
S.D. New York.

April 4, 2001.

Harkins & Hunte, Mohegan Lake, NY, by Adrian C. Hunte, of counsel, for Plaintiff.

New York City Housing Authority Law Department, New York City, by Lanny R. Alexander, of counsel, for Defendants.

## OPINION

SWEET, District Judge.

Defendants the New York City Housing Authority ("the Housing Authority"), Mario Radoslovich ("Radoslovich"), and Michael Meyer ("Meyer") (collectively, "the Defendants") have moved for an order dismissing the complaint in this action, pursuant to Federal Rule of Civil Procedure 37(d) and this Court's inherent power to control litigation. For the reasons set forth below, the motion to dismiss is denied, but other sanctions are imposed.

*The Parties*

Plaintiff Laila Barsoum ("Barsoum") was at all relevant times employed in the Housing Authority's Office of Quality and Cost Control (the "OQCC").

Defendant the Housing Authority is an agency of the City of New York.

Defendant Radoslovich was at all relevant times the Director of the OQCC.

Defendant Meyer was at all relevant times the Deputy General Manager for the Housing Authority's Capital Projects.

*Prior Proceedings*

This action was initiated by the filing of a complaint on May 16, 2000, by Barsoum, alleging employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, the Equal Pay Act, 29 U.S.C. § 206, the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and Title 8 of the Administrative Code of the City of New York § 8–101 *et seq.*, and common law tort and breach of contract claims.

On December 7, 2000, Barsoum applied to this Court for an order to compel the Defendants to complete the deposition of Meyer. The Defendants subsequently applied for an order dismissing the complaint as sanctions for alleged spoliation of evidence by Barsoum. Oral argument was heard on December 13, 2000. The Court reserved decision, and directed the parties to make written submissions by January 30, 2001, regarding the propriety of imposing sanctions on Barsoum, and the form such sanctions should take. Further submissions were received, and the matter was marked fully submitted on January 30, 2001.[1]

*Facts*

The following facts are drawn from the allegations in the complaint and other submissions by the parties, and do not constitute findings by the Court.

In or about November 1997, the Housing Authority posted the position of Deputy Director of the OQCC. Barsoum, who was employed in the OQCC at the time the Deputy Director position was posted, alleges that the Defendants failed to select her for the position for discriminatory reasons.

Barsoum alleges that on January 29, 1998, she was interviewed by Meyer for the position of Deputy Director of the OQCC, and was thus led to believe that she was being considered for that position. However, Barsoum further alleges, unbeknownst to her, at the time of the interview the Deputy Director position had already been offered to an individual from another department in the Housing Authority.

The Defendants deny that Meyer interviewed Barsoum for the Deputy Director position. They contend that he met with her at the request of the Director of Human Resources to, among other things, discuss other job opportunities she might be interested in pursuing.

The following findings are based on the affidavits, declarations, and other documentary evidence submitted by the parties.

On or about January 29, 1998, Barsoum and Meyer had a meeting. Barsoum tape recorded their conversation without Meyer's knowledge. Subsequently, Barsoum took notes of the tape recording.

At the time Barsoum met with Meyer, Barsoum was already receiving assistance from the attorney who is representing her in this action, Adrian C. Hunte ("Hunte").

In July 2000, Hunte informed Barsoum that Hunte was going over the Defendants' requests for discovery, and that one of their requests was to produce any tape recordings. Barsoum told Hunte about having taped the January 1998 meeting with Meyer, and Hunte told Barsoum to turn over the tape to Hunte, in light of the Defendants' discovery requests.

Barsoum remembers putting the tape and some papers in an envelope and taking these materials to her office at the Housing Authority. She further remembers taking the papers out of the envelope, and leaving the

---

1. Barsoum made a submission on February 5, 2001. Although untimely under the Court's original directive, Barsoum's counsel has represented without contradiction that the Defendants served their papers on Barsoum several days after the date agreed upon by counsel for both parties. Therefore, Barsoum's February 5, 2001 submission has been considered.

tape in the envelope on her desk. Barsoum's work area is open to passers by and is not within her exclusive control. Later that day, Barsoum noticed that the envelope and tape were not on her desk. Barsoum searched her office, home, and car for the tape. The tape has not been recovered.

Hunte did not instruct Barsoum to tape the meeting with Meyer. Hunte found out that Barsoum had taped the meeting in July 2000. Hunte has never seen or heard the tape, and has never had it in her possession.

Hunte did not disclose the existence of either the tape or Barsoum's notes of that tape in response to the Defendants' discovery requests. However, Hunte used Barsoum's notes at Meyer's deposition, essentially reading verbatim from Barsoum's notes of the tape recording to pose questions to Meyer. At some point during the deposition, Hunte's strategy became apparent to counsel for the Defendants. Hunte confirmed that there was an undisclosed tape recording and offered to provide the Defendants with a copy of Barsoum's notes. The Defendants declined to accept the notes, and refused to continue with Meyer's deposition.

*Discussion*

**A.   *The Standard For Sanctions***

It is well settled that a district court has "inherent power to regulate litigation, preserve and protect the integrity of the proceedings before it, and sanction parties for abusive practices." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991). This inherent power includes the authority to impose sanctions for the spoliation of evidence, *see id.* at 72; *Do-*

nato v. Fitzgibbons, 172 F.R.D. 75, 81 (S.D.N.Y.1997); *Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19, 24 (E.D.N.Y.1996), i.e., "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation," *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999). Moreover, "[w]here spoliation prevents a party from complying with a discovery order, sanctions may be awarded pursuant to Rule 37(b) of the Federal Rules of Civil Procedure." *Mathias v. Jacobs,* 197 F.R.D. 29, 36 (S.D.N.Y.2000).[2]

Whether to impose a sanction, and the severity of that sanction, requires consideration of three factors: first, the obligation of the party against whom sanctions are sought to preserve the evidence at issue; second, the party's intent; and third, the relevance of the evidence to the contested issue, or prejudice. *See Kronisch v. United States,* 150 F.3d 112, 126–27 (2d Cir.1998); *Mathias,* 197 F.R.D. at 37–39; *Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 888–90 (S.D.N.Y.1999).[3]

Any sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West,* 167 F.3d at 779. That is, the sanction should be designed to deter future spoliation of evidence, shift the risk of an erroneous judgment onto the party responsible for the loss of evidence, and remedy the prejudice suffered by the other party. *Id.* Although outright dismissal of a lawsuit is within a district court's discretion, *id.,* this

---

**2.**  Rule 37(d) provides in relevant part that if a party "fails to serve a written response to a request for inspection submitted under Rule 34, after proper service thereof, the Court may make such orders in regard to the failure as are just, including the imposition of any sanction authorized under Rule 37(b)(2)(A), (B), and (C)." Fed. R. Civ. P 37(d). Rule 37(b) provides that the court "may A) order that the matters regarding which order made or any other designated facts be deemed established for the purposes of the action in accordance with the claim of the party obtaining the order; B) preclude the disobedient party from supporting or opposing the claims or defenses, or from introducing designated matters in evidence; or C) strike out pleadings or parts thereof; stay further proceedings until the order is obeyed, dismiss the action or any part thereof,

or render a judgment by default against the disobedient party." Fed.R.Civ.P. 37(d).

**3.**  The considerations to be applied in determining whether to impose a sanction are the same whether the court is proceeding under Rules 37(d) and 34(b), *see, e.g., Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062 (2d Cir.1979) (analyzing considerations involved in imposing and determining severity of sanctions under Rule 37), or under its inherent authority, *see, e.g., Kronisch,* 150 F.3d 112 (analyzing considerations involved in imposing and determining severity of sanctions for spoliation). Therefore, cases from these two lines of authority will be cited interchangeably herein.

"is a harsh remedy to be used only in extreme situations," *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990). Usually dismissal should be imposed only after consideration of less drastic alternatives. *West,* 167 F.3d at 779.

■ A party has a duty to retain evidence that it knows or reasonably should know may be relevant to pending or future litigation. *See Kronisch,* 150 F.3d at 126. This obligation is triggered not only when a party has been put on notice by a discovery demand explicitly requesting the evidence, but also when a party has been served with a complaint or anticipates litigation. *See id.*

■ The level of intentionality goes directly to the degree of severity of any sanction that may be warranted. Dismissal requires a showing of "willfulness, bad faith, or any fault" on the part of the sanctioned party. *See Jones v. NFTA,* 836 F.2d 731, 734 (2d Cir.1987) (internal quotation marks and citation omitted); *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 387 (2d Cir.1981). "Fault" includes gross negligence. *See Penthouse Int'l,* 663 F.2d at 387; *see also Cine Forty–Second St. Theatre,* 602 F.2d at 1064 (plaintiff's grossly negligent failure to produce discovery constituted "fault" warranting sanction of precluding evidence, though under circumstances such preclusion was tantamount to dismissal). An adverse inference sanction may also be predicated on a finding of bad faith, intentional misconduct, or fault in the form of gross negligence. *See Reilly v. Natwest Markets Group Inc.,* 181 F.3d 253, 267–68 (2d Cir. 1999). In determining the degree of severity of the sanction warranted by the particular level of intentionality, the best approach is a "case-by-case" one. *Id.* at 267.

■ Finally, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue." *Kronisch,* 150 F.3d at 127. Thus, this factor is concerned with whether there has been prejudice to the party seeking sanctions. *See id.; Mathias,* 197 F.R.D. at 39. How much evidence is required to make the requisite showing "will necessarily vary from case to case, but 'care should be taken' not to require too specific a level of proof." *Kronisch,* 150 F.3d at 128 (citation omitted).

### B. *Sanctions Are Warranted*

■ Barsoum had a duty to preserve the tape recording of her meeting with Meyer because, given that she was already receiving assistance from counsel at that time, she knew or should have known that it was reasonably foreseeable that the tape would be relevant to future litigation. *See Kronisch,* 150 F.3d at 126. Moreover, as of the day in July 2000 when the tape disappeared, this litigation had already ensued, and Barsoum had been specifically put on notice by her counsel that the tape was needed in order to respond to the Defendants' discovery requests.

Barsoum's conduct was at the very least grossly negligent. By her own account, Barsoum left the tape out on her desk at the office, in an area which is open to passers by and not under her exclusive control, despite having been put on specific notice by her counsel of her obligation to turn over the tape. Barsoum's misconduct was compounded by that of her counsel, who failed to disclose the existence of the tape or Barsoum's notes until confronted by Defendants' counsel at Meyer's deposition. Hunte maintains that she did not disclose this information because she believed the notes to be inadmissible, and was hoping the tape would be recovered, at which time she intended to make full disclosure to the Defendants. This is not an acceptable excuse for her conduct, which was in violation of Barsoum's discovery obligations, and, indeed, amounted to bad faith.

Finally, the Defendants have made a sufficient showing that the tape would have been relevant to the contested issue. *See Kronisch,* 150 F.3d at 127. Barsoum avers that the tape would only have inured to the Defendants' detriment, and that her notes reflect as much. She also contends that Defendants are required to introduce extrinsic evidence that the tape would have been favorable to them. This contention is incorrect. *See id.* Certain aspects of the notes, as the Defendants point out, indicate that the tape might have helped the Defendants refute some of Barsoum's allegations about the purpose of the meeting and what transpired. The Defendants also aver that the tape

would have provided support for their affirmative defense of a legitimate, non-discriminatory reason for not offering the Deputy Director position to Barsoum because, according to the Defendants, the notes indicate that Meyer articulated such a reason to Barsoum.[4] The Defendants have not pointed to which portion of the notes they believe supports this contention, and have not articulated the legitimate, non-discriminatory reason they say was offered by Meyer. Moreover, a review of the notes, which are quite rudimentary, has not enlightened the Court in this regard. The notes do, however, indicate general concerns by Meyer about the wisdom of filling the position at all, and that Meyer discussed the possibility of other job opportunities Barsoum might be interested in pursuing. This is some showing—albeit relative thin—that the tape would have contained evidence of non-discriminatory motive on the Meyer's part.

Given that the showing of prejudice required by the Defendants is not a high one, see *Kronisch*, 150 F.3d at 127, and the other circumstances present, sanctions are certainly warranted. The Defendants insist that dismissal is the only remedy that will cure the prejudice to their defense caused by Barsoum's conduct. Barsoum has requested, in the alternative to dismissal, that the Court consider less drastic measures. Neither of the parties has proposed any alternative to dismissal.

Two sanctions which are less severe than dismissal, and yet serious, are the preclusion of evidence and an adverse inference instruction. See *Reilly*, 181 F.3d at 267 (adverse inference instruction); *Cine Forty–Second St. Theatre*, 602 F.2d at 1063–64 (preclusion of evidence). The question, then, is whether one of these sanctions would adequately serve the purposes of punishment, deterrence, and prophylaxis. See *West*, 167 F.3d at 779.

Preclusion of any evidence relating to the meeting between Barsoum and Meyers would serve the purposes of punishment and

deterrence. To the extent the occurrence of this meeting, its timing, and what transpired therein support Barsoum's claims, Barsoum will not be afforded the benefit of that evidence. Moreover, it is appropriate to preclude her from testifying as to her recollection of the meeting because she, unlike Meyer, has had the benefit of having listened to a tape recording of the meeting and even of taking notes herself of the recording.

This sanction, although it falls short of the one sought by the Defendants, also serves to remedy the prejudice to their ability to litigate the relevant issues. In the main, the prejudice claimed by the Defendants is that the tape would have enabled them to refute certain allegations by Barsoum about what transpired during the meeting. If Barsoum is precluded from introducing evidence regarding the meeting then this form of prejudice will have been cured. This sanction does not cure any prejudice caused to the Defendants' ability to litigate their affirmative defense of a legitimate, non-discriminatory reason for not offering Barsoum the Deputy Director position. However, the Defendants' showing in this regard is relatively weak, and under all the circumstances dismissal is not warranted on this basis.[5]

If, however, the Defendants themselves wish to introduce evidence of the meeting into this litigation then a different sanction will apply. In that event, Barsoum will be entitled to present evidence regarding the meeting but the jury will be informed of the absence of the tape, and will be instructed that they may draw an adverse inference against Barsoum regarding the January 1998 meeting with Meyer. Barsoum's "notes," however, may not be used in any way, such as to prepare witnesses, including Barsoum herself, or to refresh their recollection.

Finally, Barsoum may continue to depose Meyer. However, as she is precluded from introducing evidence regarding the January

---

4. Although the parties agree that the notes are themselves inadmissible, it is appropriate to look to those notes as evidence for purposes of this motion, that is, to determine whether loss of the tape has prejudiced the Defendants.

5. This is the case even though Meyer maintains that he has little recollection of the meeting, and did not record it or take notes, so that his testimonial evidence in this regard is not likely to be of great help to the Defendants.

1998 meeting, she may not make further inquiry in that regard.

*Conclusion*

Therefore, for the reasons set forth above, the motion to dismiss is denied but other sanctions are imposed.

It is so ordered.