**Mark HOHIDER, and Robert Dipaolo, On Behalf of Themselves and All Others Similarly Situated, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., and Does 1–100, Defendant.**

**Preston Eugene Branum, On Behalf of Himself and All Others Similarly Situated, Plaintiffs,**

v.

**United Parcel Service, Inc., and Does 1–100, Defendants.**

Civil Action No. 04–363.

United States District Court, W.D. Pennsylvania.

April 28, 2009.

Anita M. Laing, David R. Scott, Erin G. Comite, Scott & Scott, Colchester, CT, Arthur L. Shingler, III, Donald A. Broggi, Luis E. Lorenzana, Scott & Scott LLP, Gary D. Foster, Stephanie A. Hackett, San Diego, CA, Beth A. Kaswan, Judith Scolnick, Scott & Scott, LLP, New York, NY, Christian Bagin, Wienand & Bagin, Pittsburgh, PA, Geoffrey M. Johnson, Scott & Scott, Chagrin Falls, OH, Walter W. Noss, Scott & Scott, LLP, Cleveland Heights, OH, Judith B. Goldstein, Equal Justice Foundation, Columbus, OH, for Plaintiffs.

Charles A. Gartland, II, Glenn G. Patton, Leslie E. Wood, R. Steve Ensor, Alston & Bird, Atlanta, GA, David J. McAllister, Joseph E. Culleiton, Perry A. Napolitano, Reed Smith, Pittsburgh, PA, Dori K. Bernstein, Equal Employment Opportunity Commission Office of General Counsel, Washington, DC, for Defendants.

## MEMORANDUM ORDER

JOY FLOWERS CONTI, District Judge.

Pending before the court is an emergency motion to stay (Doc. No. 394) filed by defendant United Parcel Service, Inc. ("UPS"). UPS seeks to stay (Doc. No. 379) this court's order requiring *in camera* review of certain documents (the "withheld documents") pending appeal of that order to the United States Court of Appeals for the Third Circuit. For the reasons set forth below and as more fully set forth on the record at the hearing held April 23, 2009, the court will deny the motion to stay until the special master's report and recommendation number 3 on the disposition of defendant's assertions of privilege over its litigation hold materials is resolved in accordance with the directive set forth below.

As explained at the April 23, 2009 hearing, this court has serious concerns about defendant's conduct and the events preceding this motion which cause the court to question the timing of the filing of this motion as well as the timing of defendant's application to enforce stay in the United States Court of Appeals for the Third Circuit.

**Background of Appointment of the Special Master**

On July 16, 2007, this court certified a class of plaintiffs in this case. Defendant appealed that decision, and on February 8, 2008, the United States Court of Appeals for the Third Circuit stayed proceedings in this case pending decision on the appeal. Prior to the appeals court staying the proceedings, plaintiffs had filed a motion for preservation order[1] and motion for sanctions alleging that UPS had not sufficiently preserved e-discovery materials for this litigation (the "mo-

tions"). On December 19, 2007, the court appointed a special master to prepare a report and recommendation concerning the motions. After the court of appeals stayed the proceedings in this case, the parties disputed whether the stay affected the jurisdiction of this court to resolve the collateral issues raised in plaintiffs' motions. The special master suspended his duties, and this court inquired of the court of appeals whether the stay extended to the motions. On July 31, 2008, after the parties had a full opportunity to brief the issue, the court of appeals determined that the stay did not extend to the motions. In August 2008, the special master resumed his duties under the order appointing him.

After August 2008, the court received regular updates from the special master, held a status conference with the parties specifically to discuss the duties of the special master, and did not receive any objection from the parties concerning the nature, scope, or expense of the special master's duties. The special master has filed two comprehensive reports with the court. The first report, dated February 18, 2009, addressed the trigger of the duty to preserve and the scope of relevant evidence. (Special Master Report and Recommendation No. 1, Preliminary Determination of Relevant Evidence (Docket No. 309).) The second report, dated February 25, 2009, addressed most of the privilege issues associated with defendant's litigation hold efforts. (Special Master Report and Recommendation No. 2, First Disposition of the Parties' Assertions of Privilege and Protection (Doc. No. 310).) The special master sought and received the court's approval to file a replacement to Report and Recommendation No. 2 (the "replacement report") so that all the parties' arguments and evidence relating to the privileges asserted for litigation hold materials could be addressed in a single report. (Order Granting Special Master Request for Modification of Schedule (Doc. No. 315).) This court expected to receive that replacement report in April 2009. The defendant's recent procedural maneuver-

---

1. The motion for preservation order was resolved by the parties through a consent order in which the parties agreed to the efforts which should be

taken in the future to preserve potential relevant electronic evidence. (Doc. No. 286 filed December 23, 2008.)

ing prevented the court from having the replacement report timely filed.

## Duty to Preserve

■ A duty to preserve is an "affirmative obligation," which arises "when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D.N.J.2008). "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J.2000); *see Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D.Pa.1999) (finding that knowledge of even a potential claim is sufficient to impose a duty to preserve evidence); *Bowman v. American Medical Systems, Inc.*, No. 96–7871, 1998 WL 721079, at *3 (E.D.Pa. Oct. 9, 1998) ("A party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence"); *Barsoum v. NYC Housing Authority*, 202 F.R.D. 396, 400 (S.D.N.Y. 2001) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998) ("A party has a duty to retain evidence that it knows or reasonably should know may be relevant to pending or future litigation.")).

## Duty of Candor to the Court

Rule 3.3 of the Pennsylvania Rules of Professional Conduct, applicable to attorneys appearing before this court, states in relevant part:

> **Rule 3.3.   Candor Toward the Tribunal**
>
> (a) A lawyer shall not knowingly:
>
> (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

In certain circumstances, "failure to make a disclosure is the equivalent of an affirmative misrepresentation." Rule 3.3 Pa. Rules Prof. Conduct cm. ¶ 3.

## Possible Misrepresentations or Omissions by UPS to Plaintiffs and to the Court

It is apparent to the court that UPS was not forthright in informing plaintiffs and the court about the nature and scope of UPS's preservation efforts. For example, defendant's counsel wrote a letter to plaintiffs' counsel in 2005 stating that defendant was "in the process of placing a 'Hold,' as that term is defined in the UPS Records Manual, on all categories of documents requested by Plaintiffs in the litigation." (J. Culleiton letter to C. Bagin at 3–4, May 3, 2005.) It was also represented to plaintiffs' counsel that defendant was "even going a step further and disseminating a memorandum to applicable managers throughout the Company which describes the litigation and further details the records that are to be held from destruction." (*Id.*)

Defendant, however, did not issue the hold at that time, did not disseminate the hold memorandum, and it did not advise plaintiffs of its failure to do so. Similarly defendant did not disclose, until after the special master investigation was commenced in August 2008, that a litigation hold was not issued until February 2006—approximately two years after this case was filed.

The court directs the special master to review these and other statements made or not made by defendant and its counsel and to make findings and recommendations in the replacement report regarding whether any of defendant's conduct affects its privilege assertions.

## Circumstances Surrounding Defendant's Motion to Stay

The court is very troubled by defendant's efforts to delay or stop the court's resolution of the motion concerning whether defendant failed to preserve electronically stored information ("ESI"). The court reviewed Report and Recommendation Number 1 and Report and Recommendation Number 2. In the first report, the special master made numerous findings and recommendations regarding the trigger to the duty to preserve and the scope of relevant information. The special master recommended that the court reject a number of positions taken by defendant on issues

critical to the spoliation analysis. For example, defendant took the position that it had no duty to preserve relevant ESI until the case was certified, some three years after the lawsuit was filed. The special master recommended that the court find that defendant's duty to preserve included ESI. (Report and Recommendation No. 1 at 11–14.) The special master also recommended that the court (a) reject defendant's arguments that certain workers' compensation information was not subject to a duty to preserve (*id.* at 21–24), (b) find that the duty to preserve encompassed a broader scope of evidence than defendant contends (*id.* at 25–35), (c) and reject defendant's argument that this case be limited to defendant's formal ADA accommodation request process (*id.* at 36–44).[2]

In his report and recommendation on privilege, the special master also recommended that the court reject certain positions asserted by defendant, while at the same time recommending that the court sustain other of defendant's privileges. For example, the special master recommended that the court reject defendant's assertion of privilege over an e-mail dated May 12, 2005 sent by L. Herron (the "Herron Email"). (Report and Recommendation No. 2 at 40–46.) As the court noted at the April 23, 2009 hearing, this email is central to defendant's 2005 preservation efforts and, based upon the court's own review of this email and the evidence defendant offered in support of this privilege, the court concludes there is little likelihood that this court could find the Herron Email to be privileged. The special master also recommended that the court overrule defendant's privilege assertions relating to the emails sent by non-lawyers to other non-lawyers forwarding the Herron Email. (*Id.* at 46–49.)

After the special master issued these two reports, defendant undertook certain actions to delay or stop the investigation ordered by this court. First, defendant asked the United States Court of Appeals for the Third Circuit to stay the court-ordered special master's completion of his duties. Second, defendant refused to submit the withheld

documents for *in camera* review. The defendant's timing and motives appear suspicious for the reasons more fully explained at the April 23, 2009 hearing.

With regard to defendant's application to stay the special master's completion of his duties, the court is very troubled that defendant did not ask this court to address whether the special master's actions were inappropriate or unduly expensive before seeking intervention from the court of appeals. Under the special master appointment order, defendant has the right and ability to seek this court's review of anything the special master did or did not do. In addition, if defendant honestly believed that this court was violating the stay issued by the court of appeals, defendant should have raised that issue in the first instance with this court. If defendant was truly concerned about the scope and cost of the investigation, there was no reason for it not to bring those concerns to the court. Because defendant did not do so, the court is skeptical about the timing of defendant's recent actions. In particular, the court is concerned that defendant is seeking to delay or stop the court's ability to resolve the pending motion for sanctions, because the special master is uncovering information defendant was otherwise loathe to disclose in a timely and cooperative manner and because defendant does not like the recommendations the special master has already made to the court. At the hearing April 23, 2009, defense counsel represented to the court that the withheld documents are innocuous emails. The court, however, can not determine the import of the withheld documents without reviewing them *in camera.*

■ With respect to the court's order requiring defendant to produce documents for *in camera* review, the court found no precedential authority in support of the defendant's refusal to comply with that order. No lawyer had ever previously advanced to this court the argument that a trial court may not review allegedly privileged documents *in camera.* Indeed, the court is frequently called upon to review such documents be-

---

2. The parties were not required to object to this first report since it was an interim report by the special master to provide guidance for the par-

ties. At this time, the court has not yet adopted or rejected the special master's recommendations.

cause it is the *only* way, in many cases, to determine whether the documents are privileged. In this case, the court finds that *in camera* review is not only proper, but necessary for several reasons:

- Given the number of documents already produced, the withheld documents (approximately 40–50 emails) are a minuscule portion of those documents. Review of those documents in camera would not be time consuming or expensive.

- No litigation hold was issued by defendant for approximately two years after this case was filed and the withheld documents relate to the delay in issuing the litigation hold.

- Despite defendant's assertions that the withheld documents are "core" work product, the court cannot make that determination without seeing them. In fact, defendant produced other seemingly "core" work product documents for *in camera* review in this case, but it has chosen for undisclosed reasons to draw the line on these allegedly "core" work product documents.

- Based upon the descriptions and recipients of some of the withheld documents from defendant's privilege log, the court doubts defendant's "core" work product claims can be sustained for all the withheld documents.

- Without reviewing the documents, it is impossible to determine whether the privilege over such documents was waived through defendant's conduct in this case— conduct that the court views as troubling and which may implicate a potential basis for waiver.

- The special master's inability to review these documents *in camera* will render him unable to make findings and recommendations to the court in his next report, thereby adding time and expense for the parties and the court to resolve finally this motion concerning preservation of evidence.

### ORDER

AND NOW this 28th day of April 2009, for the reasons set forth above and as set forth on the record, the Emergency Motion to Stay (Doc. No. 394) filed by defendant, United Parcel Service, Inc. is hereby DENIED.

IT IS FURTHER ORDERED that the special master shall submit his report and recommendation on the disposition of the parties' assertion of privilege not later than May 4, 2009, excluding the withheld documents. The parties shall have seven calendar days to file their objections to, or motions to adopt or modify, the special master's report. If the special master recommends that the Herron Email is not privileged and the court adopts that recommendation, 1) defendant shall turn over the withheld documents to the special master within two business days of the court's entry of an order adopting that finding; and 2) the special master shall file a supplemental report and recommendation concerning whether any or all of the withheld documents are privileged.

The special master's April 30, 2009 deadline to submit a report to the Court on phase two (*see* Order Regarding Special Master Proceedings at 4, Dec. 23, 2008 (Docket No. 285)) is postponed to a date to be determined.