167 F.3d 776
 Ronald WEST, Deceased and Daphne West, Individually, and as
Executrix of the Estate of Ronald West, Deceased,
Plaintiffs-Appellants,
v.
The GOODYEAR TIRE & RUBBER COMPANY and The Budd Company,
Defendants-Appellees.
 Docket No. 98-7324
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 24, 1998.
Decided Feb. 12, 1999.
 
 Aaron N. Woods, Risjord & James, Overland Park, KS (Edward J. Lackaye, Jr., of counsel), for Appellants.
 Alan D. Kaplan, Gallagher, Gosseen, Faller, Kaplan & Crowley, Garden City, NY, for Appellee The Goodyear Tire & Rubber Company.
 Edward M. Kay, Clausen Miller, Chicago, IL, for Appellee The Budd Company.
 Before: OAKES, WALKER and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 BACKGROUND
 
 1
 Ronald West owned and operated West Indies Auto Body in Poughkeepsie, New York for over 16 years. While West specialized in auto body repair, he also performed tire and rim work and owned a tire mounting machine and an air compressor that are central to this case.
 
 
 2
 In January 1991, Aston Weir brought two tires that had been manufactured by The Goodyear Tire & Rubber Company ("Goodyear") into West's shop. Weir asked West to find some rims to fit the tires, mount the tires on the rims, and put the assembled wheels on Weir's truck.
 
 
 3
 As fate would have it, West already had two used rims that he had purchased from a junkyard. West knew that the used rims were 16.5 inches in diameter because, upon examination, he saw that "[i]t said 16.5 on the rim." The rims had been manufactured by The Budd Company ("Budd").
 
 
 4
 West never tried to determine the diameter of the two tires--he simply assumed (incorrectly) that both were 16.5 inches in diameter. Had West read the information printed on the tires, he would have seen that they had a diameter of only 16 inches. He would also have seen Goodyear's "Safety warning" that instructed the user to "MOUNT ONLY ON 16 INCH RIMS." West admitted at a deposition that if he had read the safety warning he would not have tried to mount Weir's tires onto the 16.5 inch rims.
 
 
 5
 On January 5, 1991, West undertook to mount the 16 inch tires onto the 16.5 inch rims. Despite the fact that they were mismatched, the mounting of the first tire and rim went smoothly. West was able to inflate the tire, and the beads of the tire (the bands at the bottom of the sidewall that fit within the rim) fit within the rim. West put to one side this first inflated tire/rim combination (which the parties refer to as the "exemplar wheel") and turned his attention to the second tire.
 
 
 6
 West placed the second rim on his tire changing machine, lubricated the second tire, placed it on the changing machine, and engaged the machine's safety lock. West could not, however, get the second tire/rim combination to hold air. Removing the tire and rim from the tire mounting machine, he noticed that the beads of the tire were not seating properly within the rim. West bounced the tire on the ground several times to get the beads to seat properly. West then set the tire on the ground, and started to add air using a hand-held air nozzle that was connected to an air compressor. The compressor was set at an astronomical pressure of 160 pounds per square inch. West added air for a period between one and five minutes, but never checked the inflation pressure of the tire. At some point, the tire exploded, injuring West.
 
 
 7
 West did not return to his shop for about two weeks after the accident. When he returned, he noticed that the first tire and rim that he successfully mounted, the "exemplar wheel," was still fully inflated, but he did nothing in particular with the exemplar wheel. West retained an attorney, and in late January 1991, the attorney's investigator removed both the exemplar wheel and the tattered remains of the second wheel. The exemplar wheel was still fully inflated at that time.
 
 
 8
 West's counsel kept the exemplar wheel for about 10 months. During this period, West's lawyer retained Risjord & James, a law firm, based in Kansas, that specializes in tire explosion cases. On November 7, 1991, West's attorney sent all the accident related materials, including the exemplar wheel, to Risjord & James in Kansas. When the exemplar wheel was received, Randy James of Risjord & James took photos of it and then ordered that it be deflated. James claims that he was afraid that the wheel might explode and cause serious injury. James did not notify the manufacturer of the tire (Goodyear) or the rim (Budd) before he deflated the exemplar wheel.
 
 
 9
 On February 26, 1992, West and his wife filed suit in the United States District Court for the Southern District of New York (Owen, Judge ), alleging that the negligence of Goodyear and Budd had caused his injuries. The Wests sought compensatory and punitive damages for Mr. West's injuries and Mrs. West's loss of consortium.
 
 
 10
 After discovery began, the defendants asked to inspect West's shop, and especially his tire mounting machine and air compressor. An inspection was scheduled for June 1993. However, in May 1993, with no notice to the defendants, West went ahead and sold the tire changing machine and air compressor. Although the defendants eventually located the tire mounting machine and compressor, they had been left outside and exposed to the elements for some time, and their condition had deteriorated.
 
 
 11
 On January 2, 1996, Budd moved for dismissal of the complaint based on spoliation of the exemplar wheel, the tire changing machine and the air compressor. At the same time, Goodyear moved for an order excluding the spoliated evidence, but did not seek dismissal. Both defendants also moved for summary judgment on West's punitive damage claims.
 
 
 12
 Mr. West died on November 19, 1996, and Mrs. West, as executrix of Mr. West's estate, was substituted as party-plaintiff for her late husband.
 
 
 13
 On May 2, 1997, Judge Owen held a hearing on all the pending motions, and on July 18, 1997, he granted partial summary judgment to the defendants on the punitive damage claims. On February 13, 1998, Judge Owen dismissed the complaint in its entirety as a sanction for spoliation of the evidence. Mrs. West now appeals both orders.
 
 DISCUSSION
 I. Spoliation of Evidence
 
 14
 Mrs. West contends that Judge Owen abused his discretion by dismissing the complaint as a sanction for spoliation. Essentially, Mrs. West claims that, in this case, dismissal was a Draconian remedy for spoliation. We agree, and vacate and remand the judgment of the district court for consideration of a lesser sanction.
 
 A. Standard of Review
 
 15
 Dismissal of a case as a sanction for spoliation of evidence is reviewed under an abuse of discretion standard. See Complaint of Consolidation Coal Co., 123 F.3d 126, 131 (3d Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1380, 140 L.Ed.2d 526 (1998); see also Sieck v. Russo, 869 F.2d 131, 134 (2d Cir.1989). We will reject the district court's factual findings in support of its imposition of sanctions only if they are clearly erroneous. See Friends of Animals, Inc. v. United States Surgical Corp., 131 F.3d 332, 334 (2d Cir.1997) (per curiam).
 
 B. Governing Law
 
 16
 Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. See generally Black's Law Dictionary 1401 (6th ed.1990). It has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by "that favourite maxim of the law, omnia presumuntur contra spoliatorem." 1 Sir T. Willes Chitty, et al., Smith's Leading Cases 404 (13th ed.1929); see Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998).
 
 
 17
 A federal district court may impose sanctions under Fed.R.Civ.P. 37(b) when a party spoliates evidence in violation of a court order. See Fed.R.Civ.P. 37(b)(2); John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir.1988). Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Sassower v. Field, 973 F.2d 75, 80-81 (2d Cir.1992); see also P.L. McGlynn, Note, Spoliation in the Product Liability Context, 27 U. Mem. L.Rev. 663 (1997).
 
 
 18
 Although a district court has broad discretion in crafting a proper sanction for spoliation, we have explained that the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. See Kronisch, 150 F.3d at 126. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." Id.; see Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir.1988); 7 James Wm. Moore, Moore's Federal Practice § 37.50[a], at 37-72, 37-73 (1998); Jamie S. Gorelick et al., Destruction of Evidence § 3.14, at 111 (1989).
 
 
 19
 "[O]utright dismissal of a lawsuit ... is within the court's discretion." Chambers, 501 U.S. at 45, 111 S.Ct. 2123; see Fed.R.Civ.P. 37(b)(2)(C). Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party. See Jones v. NFTA, 836 F.2d 731, 734 (2d Cir.1987). However, because dismissal is a "drastic remedy," it "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions." John B. Hull, Inc., 845 F.2d at 1176 (citation and internal quotation omitted); see Valentine v. Museum of Modern Art, 29 F.3d 47, 49-50 (2d Cir.1994) (per curiam).
 
 
 20
 Defendants maintain that dismissal was appropriate in this case because the spoliated evidence was essential to their central defense: that West grossly over-inflated the tires to fit them on mismatched rims. They argue that if the exemplar wheel had been preserved in its inflated state, it would have been over-inflated and would have provided highly probative evidence of their theory of the case. In essence, defendants believe that by deflating the exemplar wheel, West's lawyers deflated their case.
 
 
 21
 Similarly, defendants hoped to use the tire mounting machine and air compressor to prove that West did indeed over-inflate the tires. When the defendants located the mounting machine and air compressor, their experts examined them and concluded that, due to poor maintenance, they malfunctioned and could have caused over-inflation. However, because West sold these items and the purchaser left them outside over the winter, defendants' experts had no way to determine the condition of the machines when they were in West's shop at the time of the accident. This problem, they assert, seriously damaged the defense case.
 
 
 22
 Judge Owen found that the disabilities that defendants would suffer at trial could not be redressed by any sanction short of dismissal. He concluded that:
 
 
 23
 Merely excluding all reference to the exemplar tire or parts would be inadequate: defendants are entitled to have the opportunity to show that plaintiff should have been on notice that he was mismatching. Instructing the jury that it may draw adverse inferences from plaintiff's spoliation is also wholly inadequate and fails in effecting fairness, considering that evidence which defendants are now unable to offer might have been dispositive.
 
 
 24
 We disagree with Judge Owen's conclusion that dismissal constituted the only adequate sanction. It was not necessary to dismiss the complaint in order to vindicate the trifold aims of: (1) deterring future spoliation of evidence; (2) protecting the defendants' interests; and (3) remedying the prejudice defendants suffered as a result of West's actions. See Kronisch, 150 F.3d at 126. Judge Owen could have combined alternative sanctions in a way that would fully protect Goodyear and Budd from prejudice. For example, the trial judge could: (1) instruct the jury to presume that the exemplar tire was overinflated; (2) instruct the jury to presume that the tire mounting machine and air compressor malfunctioned; and (3) preclude Mrs. West from offering evidence on these issues. We have previously endorsed use of these alternative sanctions, and in this case, conclude that they will suffice to protect the defendants.[1] See, e.g., id. (adverse presumption instruction); Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir.1991) (barring party from presenting evidence opposing claim); see also Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719-21 (3d Cir.1997) (preventing spoliator's expert witness from testifying about spoliated evidence), cert. denied, --- U.S. ----, 118 S.Ct. 1079, 140 L.Ed.2d 137 (1998); Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir.1993) (same).
 
 
 25
 Although we cite some examples of alternative sanctions, we decline to prescribe precisely which remedial measures Judge Owen should adopt on remand. We leave this question to the sound discretion of Judge Owen, confident that he will arrive at an appropriate sanction, short of dismissal, which will serve the punitive, remedial, and prophylactic aims of the spoliation rules.
 
 II. Punitive Damages
 
 26
 On appeal, Mrs. West also argues that Judge Owen erred by granting partial summary judgment to the defendants on her claims for punitive damages. We lack jurisdiction to reach this issue.
 
 
 27
 Subject to limited exceptions, this Court hears appeals only from "final decisions of the district courts." 28 U.S.C. § 1291; see 28 U.S.C. § 1292; Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). A grant of partial summary judgment that resolves only some of the issues raised by a complaint is not an appealable final judgment. However, "[u]pon appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable." 15B Charles A. Wright et al., Federal Practice & Procedure: Jurisdiction 2d. § 3914.28, at 202 (1992); see Armstrong v. McAlpin, 699 F.2d 79, 94 (2d Cir.1983); Allied Air Freight, Inc. v. Pan Am. World Airways, Inc., 393 F.2d 441, 444 (2d Cir.1968); Rose v. A.C. & S., Inc., 796 F.2d 294, 298 (9th Cir.1986).
 
 
 28
 Judge Owen's decision to grant partial summary judgment in favor of Goodyear on West's claim for punitive damages was a non-appealable interlocutory order. See Mancuso v. New York State Thruway Auth., 86 F.3d 289, 291-92 (2d Cir.1996); PYCA Indus. v. Harrison County Waste Water Management Dist., 81 F.3d 1412, 1421-22 (5th Cir.1996). Although the partial summary judgment merged into the subsequent judgment of dismissal, we are now vacating the final judgment of dismissal. Thus, the grant of partial summary judgment on West's claim for punitive damages reverts to its original interlocutory status and we lack jurisdiction to entertain this claim on appeal. See Armstrong, 699 F.2d at 94; Rose, 796 F.2d at 298-99.
 
 
 29
 Reserving review of this ruling until after resolution of West's claims in the district court provides the most efficient and effective use of judicial resources. Before or during a trial on the merits of West's claims, if one should be held, Judge Owen may decide to revisit his ruling. See Fed.R.Civ.P. 60(b). In addition, if defendants win a verdict in the district court, the punitive damages issue would be rendered moot. If, on the other hand West prevails, a subsequent appeals panel would have a more fully-developed record to determine whether punitive damages should have been recovered. Cf. Mancuso, 86 F.3d at 292 (order denying summary judgment on punitive damage claim "eminently reviewable" following entry of final order). Therefore, we dismiss West's appeal of the grant of partial summary judgment without prejudice to West's right to appeal after a final order is entered by the district court.
 
 CONCLUSION
 
 30
 Dismissal of the complaint was too harsh a sanction under the circumstances of this case. The judgment of the district court is therefore VACATED and REMANDED with instructions to fashion an appropriate, but less severe, sanction for plaintiffs' spoliation. We lack jurisdiction to consider plaintiffs' challenge to Judge Owen's grant of partial summary judgment on the issue of punitive damages, and this portion of the appeal is therefore DISMISSED.
 
 
 
 [1]
 It is noteworthy that Goodyear did not move for dismissal as a sanction for spoliation; it only sought to have evidence relating to the spoliated materials excluded at trial. Only Budd moved to dismiss the complaint on the ground of spoliation. Obviously, Goodyear believed that lesser sanctions, like exclusion of spoliated evidence, would protect its interests, although Goodyear would now benefit from the district court's dismissal