GAJARSA, Circuit Judge,
concurring-in-part and dissenting-in-part.
While I agree with the majority that there was spoliation of evidence by Ram-bus, I dissent from that part of the majority’s opinion that remands for a reexamination of the evidence for bad faith and vacates the district court’s sanction award. Even though the majority applauds with one hand the district court’s “inherent power to control litigation,” West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir.1999), with the other hand it strangles this power by vacating the district court’s sanction award. Indeed, the majority does not review the district court’s sanction award for an abuse of discretion, instead it reviews the facts and weighs the evidence before it substitutes its judgment for that of the district court, deciding that based on the district court’s thorough factual analysis, it would not have granted the dispositive sanctions. Because we should not “disarm the [district] court of its important power to police its proceedings to ensure transparency and predictability and to discourage mischievous conduct by litigants,” I dissent.[1] Transdean Corp. v. *1333 Bridgewood Servs., Inc., 290 F.3d 1364, 1374 (Fed.Cir.2002).
The district court found that Rambus’ conduct “impugned” the very integrity of the judicial system. Micron Tech., Inc. v. Rambus Inc., 255 F.R.D. 135, 151 (D.Del.2009) (“District Court Op.”). In so doing, Rambus also abused the privilege of owning a patent monopoly. “As recognized by the Constitution, [a patent] is a special privilege designed to serve the public purpose of promoting the ‘Progress of Science and useful Arts’ ” and “is an exception to the general rule against monopolies and to the right to access to a free and open market.” Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806, 816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Thus, the public has a “paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other types of inequitable conduct....” Id. Here, Rambus abused its privilege by intentionally — as found by the district court — destroying evidence in bad faith to protect its exclusive monopoly.
Instead of recognizing this abuse by Rambus, the majority searches to find a needle in the haystack because, in its collective superior judgment, Rambus’ conduct does not require taking away that privilege. In fact, the majority fails to consider the “high hurdle” that Rambus must overcome in showing that the district court abused its discretion. Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1218 (Fed.Cir.2002). In so doing, the majority reweighs the evidence and decides that “several key items” on which the district court relied “may lead to a determination of bad faith,” but the basis on which the district court “reached that conclusion” was not “clear.” Majority Op. at 1327.
As an appellate court, we should not decide whether the facts before us “may” lead to a conclusion that we agree with, but whether by so concluding the district court abused its discretion. Indeed, “[t]he question, of course, is not whether ... the Court of Appeals, would as an original matter have [resolved the case in the same way as the District Court]; it is whether the District Court abused its discretion in so doing.” Nat’l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (citations omitted) (rejecting appellate court’s reweighing of evidence and upholding district court’s imposition of terminating sanctions for discovery violations as this did not amount to an abuse of discretion).
Here, the district court followed the appropriate Third Circuit standard and provided ample basis in fact for its decision to award dispositive sanctions. District Court Op. at 148-51. In the Third Circuit, a spoliating party acts in bad faith when it “intended to impair the ability of the potential defendant to defend itself.” Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 80 (3d Cir.1994). Under this standard, the district court did not abuse *1334 its discretion in finding that Rambus did, in fact, act in bad faith.
First, Rambus used its document retention plan to disguise and hide its destruction of relevant documents. Rambus “instructed patent counsel to purge [its] patent files,” which would have at least been relevant to inequitable conduct. District Court Op. at 150. Further, Micron’s defenses of patent misuse and violations of unfair trade and antitrust laws could all be “illuminated by evidence of a non-public nature, e.g., by internal Ram-bus documents,” id. at 151, which almost certainly could have been included in the 300 boxes of documents destroyed in the second shred day in August 1999, id. at 145, or the 480 boxes destroyed on December 28, 2000, id. at 147. The district court, however, did not make a blanket determination that Rambus’ document destruction impeded all of Micron’s defenses. In fact, the district court found Micron’s ability to assert anticipation and obviousness would not have been impaired by Rambus’ spoliation, as the pri- or art used to assert such defenses is publicly available. Id.
Second, Rambus’ document retention policy informed employees they should “LOOK FOR THINGS TO KEEP,” including documents that would help establish conception but “expunge” “documents questioning the patentability of Rambus inventions.” Id. at 142 n. 26. This policy remained in effect even after December 1998, the date after which destruction of documents was deemed to be spoliation. Id. at 150.
Third, Rambus’ own documents (or, more accurately, those that did not make it to the shredding bin) demonstrate that it was aware that its document retention policy resulted in destruction of documents relevant to litigation. Outside counsel Neil Steinberg e-mailed Rambus executives on July 12, 2000 explaining his desire for a new document retention policy that “is similar to the previous policy — however, this time the IP group will attempt to execute the policy more effectively.” Id. at 147 n. 57. In addition, Rambus’ numerous misrepresentations about its document retention policy during the litigation are evidence, as found by the district court, of a guilty conscience. Id. at 147-48, 151.
In criticizing the district court’s sanctions award, the majority claims that the district court must explain the propriety of the sanction “based on the degree of bad faith and prejudice and the efficacy of other sanctions.” Majority Op. at 1328. This misstates the analysis a district court must undertake to award sanctions for spoliation in the Third Circuit. Schmid requires that a district court determine:
(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.
13 F.3d at 79 (citations omitted). With regard to the first factor, the district court must determine the “degree of fault” of the spoliating party, not the degree of bad faith. It is incongruous to establish a “degree” of bad faith — a party either did or did not act in bad faith. Indeed, Schmid recognized this by defining bad faith as whether the spoliator “intended to impair the ability of the potential defendant to defend itself----” Id. at 80 (emphasis added). Requiring degrees of bad faith is the equivalent of finding whether or not a party is “just a little bit pregnant.” The majority’s desire for the district court to define how “bad is bad” is contrary to *1335 Third Circuit law, which this court must apply.
The majority further states that the district court failed to satisfy the third Schmid factor by not explaining how holding Rambus’ patents unenforceable would deter future spoliation of evidence, protect Micron’s interests, and remedy the prejudice to Micron. Majority Op. at 1329-30. Not only is this contrary to the record, but the majority is now creating requirements for the imposition of dispositive sanctions that do not exist in the controlling regional circuit law. As explained above, the district court did not abuse its discretion in finding that Rambus acted in bad faith or that the destruction of these documents prevented Micron from mounting an appropriate defense. Further, the district court specifically found that any sanction other than a dispositive one would be “impractical [and] border[] on meaningless” due to the egregiousness of Rambus’ conduct. District Court Op. at 151. Indeed, Rambus’ conduct “impugned” “the very integrity of the litigation process.” Id. Obviously, a dispositive sanction will serve to deter others from the egregious conduct seen here. There is no better way for the district court to have complied with the third Schmid factor.
In vacating the sanctions award, the majority has called the firing squad to the ready, the squad cocking their guns and taking aim, but instead of shooting the appropriate and culpable party, the squad aimed at the district court’s proper determinations of fact. The majority selectively chooses those facts that support its desired outcome, while ignoring those that do not. Weighing evidence as a fact finder is not our function as an appellate court. If the evidence that was considered and weighed by the district court is objectively analyzed by this court under the abuse of discretion standard, it would lead all reasonable people to affirm. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (holding that the appellate court erred in excluding expert testimony by “applying an overly ‘stringent’ review to that ruling [and thereby] failing] to give the trial court the deference that is the hallmark of abuse-of-discretion review”). On remand, the district court would not, in my judgment, need to review any additional evidence; it may only be required to parse the facts more specifically and again determine that the only appropriate sanction for Rambus’ egregious conduct is dismissal of this suit. Moreover, I agree with the district court that under these facts, such a sanction would be appropriate.
In substituting its own views for those of the district court, the majority directly interferes with the sound discretion of the trial courts in managing their cases and prevents them from protecting the litigation process, which they are inherently bound to do. Cooler & Gell v. Hartmarx Corp., 496 U.S. 384, 404, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (“Deference to the determination of courts on the front lines of litigation will enhance these court’s ability to control litigants before them.”). Because the majority ignores this essential and inherent power of the district court, I dissent from its vacateur of the sanction imposed by the district court.

. Separately, the majority's discussion of what constitutes reasonably foreseeable litigation in its spoliation analysis is troubling. See Majority Op. at 1319-21. Because the Third *1333 Circuit has not spoken on the outer bounds of reasonably foreseeable litigation, this court may look to the law of other circuits to help inform the issue. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 875 (Fed.Cir.1985), overruled on other grounds by Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059 (Fed.Cir.1998). While I believe the majority is correct that circuits generally do not require "imminent litigation” for it to be reasonably foreseeable, the majority uses its “flexible” standard to overturn the district court's finding of no spoliation in Hynix Semiconductor, Inc. v. Rambus, Inc., 645 F.3d at 1344-45 (Fed.Cir.2011), the companion to this case. I disapprove of this backdoor imposition of Federal Circuit law in place of that of the regional circuit and additionally dissent from the portion of the majority’s Hynix opinion that overturns the district court's spoliation determination.